Filed 6/22/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Estate of JEROME NORMAN POST, Deceased. | |
| KENNETH POST et al., Petitioners and Respondents, v. ANGELA POST, Objector and Appellant. | A151975 (San Mateo County Super. Ct. No. 16PRO00542) |

Objector Angela Post appeals from the probate court's order confirming title to the proceeds of decedent Jerome Norman Post's life insurance policy to petitioners Kenneth Post and Eric Post and directing the insurance company to pay the policy's death benefit to them, even though she is named as the policy's primary beneficiary.  Because the probate court lacked subject matter jurisdiction over the proceeds of the life insurance policy, the order is void.  We therefore reverse.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Decedent and objector were married for 32 years.  Petitioners are decedent's sons from a prior relationship.

On January 7, 1993, decedent and objector secured a joint term life insurance policy (Policy) through Manhattan National Life Insurance Company (Manhattan National).  The Policy names objector as the primary beneficiary, with petitioners named as contingent beneficiaries.

On July 8, 2013, decedent executed a will.

On April 8, 2014, a final judgment of marital dissolution (Judgment) was filed, dissolving decedent's marriage to objector. The Judgment awards decedent full ownership of the Policy.

On May 13, 2016, decedent executed a handwritten codicil (Codicil). In part, the Codicil states that he did not want objector "inheriting anything from [him] under any circumstances by beneficiary designation or otherwise." The Codicil does not specifically reference the Policy.

On May 16, 2016, decedent died. At the time of his death, objector remained as the primary beneficiary of the Policy.

On September 3, 2016, Manhattan National advised Julie Anne Kress, decedent's sister, that there were disputed claims regarding the Policy's benefit proceeds. The letter requested either a court order directing it as to how to make payment, or an agreement made by all parties.

On November 22, 2016, Kress filed a petition for probate of will and for letters testamentary, and for authorization to administer decedent's estate under the Independent Administration of Estates Act (Prob. Code, § 10400 et seq.) (Act).

On January 3, 2017, letters with full authority under the Act were granted to Kress.

On May 8, 2017, petitioners petitioned the probate court for an order confirming title to personal property, seeking to be designated as the rightful beneficiaries of the Policy under Probate Code sections 5040[1] and 9611.[2]

_____

[1] Probate Code section 5040, subdivision (a) provides, in relevant part: "[A] *nonprobate transfer* to the transferor's former spouse, in an instrument executed by the transferor before or during the marriage or registered domestic partnership, fails if, at the time of the transferor's death, the former spouse is not the transferor's surviving spouse as defined in Section 78, as a result of the dissolution or annulment of the marriage or termination of registered domestic partnership. . . ." (Italics added.) Significantly, subdivision (e) of this section defines the term "nonprobate transfer" as "a provision, *other than a provision of a life insurance policy*, of either of the following types: [¶]

On May 19, 2017, objector filed a response to petitioners' petition. In it, she asserted she and decedent were registered domestic partners from November 24, 2015, until the date of his death. She also asserted the Policy was not a part of decedent's estate and therefore was not subject to this probate proceeding.

On May 26, 2017, petitioners filed a reply to objector's response. They asserted decedent was not in a legal domestic partnership with objector. Along with their reply, they included a declaration from decedent's estate attorney. She reported that she met with decedent on May 13, 2016. He stated that he wanted to confirm and ensure that objector received nothing from him after his death, "either by will, devise, beneficiary designation, or otherwise." He reportedly "was concerned that he may not have proactively retitled all assets, updated beneficiary designations, nor effectively unwound a short lived and immediately regretted attempt to reconcile with [objector]." The attorney assisted him in drafting the Codicil at their meeting, but he died before he could return the following week to execute a more formal version of the document. It was her understanding that, had there been more time, decedent "desired and intended that all beneficiary designations and assets passing outside of his estate be retitled to remove his ex-wife as a beneficiary."

On June 2, 2017, petitioners filed a supplement to their reply.

On June 9, 2017, objector filed a surreply in response to the supplemental reply. She conceded that she had no community property interest in the life insurance proceeds

(1) A provision of a type described in [Probate Code] Section 5000. [¶] (2) A provision in an instrument that operates on death, other than a will, conferring a power of appointment or naming a trustee." (Italics added.)

[2] Probate Code section 9611, subdivision (a) provides, in relevant part: "In all cases where no other procedure is provided by statute, upon petition of the personal representative, the court may authorize and instruct the personal representative, or approve and confirm the acts of the personal representative, in the administration, management, investment, disposition, care, protection, operation, or preservation of the estate, or the incurring or payment of costs, fees, or expenses in connection therewith."

because the couple had not formally registered as domestic partners. She maintained, however, that the Codicil did not override the prior beneficiary designation.

On June 16, 2017, the probate court issued its order naming petitioners as the "proper and rightful beneficiaries" of the Policy's proceeds. This appeal followed.

## DISCUSSION

Among other things, objector asserts the Policy is not part of decedent's estate and that, as a result, the probate court had no jurisdiction over the proceeds of the Policy or Manhattan National, and was not authorized to award the insurance proceeds to petitioners. Petitioners concede the Policy proceeds are not part of the probate estate. However, they contend the probate court had jurisdiction to make an equitable determination regarding the Policy's beneficiary designation. They are mistaken.

The probate court is a department of the superior court that exercises its jurisdiction in proceedings that concern the administration of a decedent's estate, including proceedings to probate a will and will contests as well as proceedings to determine entitlement to distribution of a decedent's estate and the subsequent distribution thereof. (Prob. Code, §§ 7050, 8200, 11600, 11700; *Estate of Bowles* (2008) 169 Cal.App.4th 684, 695.) "The jurisdiction of the probate court is in rem and the res is the decedent's estate." (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 1003.) "At any time after a decedent's death, any interested person may commence proceedings for administration of the estate of the decedent" and petition to the probate court for an order for probate of the decedent's will.[3] (Prob. Code, § 8000.)

"While the superior court in this state exercises both equity and probate jurisdiction, still the procedure to be followed in seeking relief within those two jurisdictions is widely varied. And if the probate procedure laid down by the code is

---

[3] Thus, a petition for the probate of a will is "the first step in a special proceeding," not a civil action where one party prosecutes another. (*Estate of Raymond* (1940) 38 Cal.App.2d 305, 307.)

followed, then only relief under probate jurisdiction can be granted. In such a case general equity relief cannot be secured." (*In re Estate of Davis* (1902) 136 Cal. 590, 597.) As the Supreme Court later stated in *Estate of Bissinger* (1964) 60 Cal.2d 756, 764: "The rule is that 'while the superior court, sitting in probate, is a court of general jurisdiction, "the proceedings being statutory in their nature, the court has no other powers than those given by statute and such incidental powers as pertain to it and enable the court to exercise the jurisdiction conferred upon it, and can only determine those questions or matters arising in the estate which it is authorized to do. Thus, in the exercise of the powers conferred upon it, its jurisdiction is limited and special, or limited and statutory." ' "[4]

Subject matter jurisdiction is the power of the court over a cause of action or to act in a particular way. The lack of subject matter jurisdiction means the entire absence of the power to hear or determine a case, i.e., an absence of authority over the subject matter.[5] Where the evidence is not in dispute, a determination of subject matter

---

[4] This principle is well established: "Probate court jurisdiction is in the superior court, the probate court merely being a department of the superior court exercising such jurisdiction. [Citations.] However, the jurisdiction and powers of the probate court are wholly statutory, and therefore limited. [Citations.] ' " 'Probate proceedings being purely statutory, . . . the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided.' " ' " (*Conservatorship of Coffey* (1986) 186 Cal.App.3d 1431, 1439.)

[5] "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.] Familiar to all lawyers are such examples as these: A state court has no jurisdiction to determine title to land located outside its territorial borders, for the subject matter is entirely beyond its authority or power. [Citation.] A court has no jurisdiction to adjudicate upon the marital status of persons when neither is domiciled within the state. [Citations.] A court has no jurisdiction to render a personal judgment against one not personally served with process within its territorial borders, under the rule of *Pennoyer v. Neff* [(1878)] 95 U.S. 714 . . . . [Citation.] A court has no jurisdiction to hear or determine a case where the type of proceeding or the amount in controversy is beyond the jurisdiction defined for that particular court by statute or

5

jurisdiction is a legal question subject to de novo review.  (*Guardianship of Ariana K.* (2004) 120 Cal.App.4th 690, 701.)  In the absence of subject matter jurisdiction, a trial court has no power to hear or determine the case and any judgment or order rendered by a court lacking subject matter jurisdiction is void on its face.  (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196.)  A court's lack of subject matter jurisdiction is *never waived* and can be raised for the first time on appeal.[6]  (*Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873, 876, fn. 1.)

Apart from $1,000 in personal property, the only asset listed in the probate petition is the proceeds of the insurance policy.  Formal probate proceedings were not required for the personal property because that amount can be transferred by affidavit without seeking letters of administration.[7]  The question thus is whether the jurisdiction of the probate court may be invoked where the only relevant alleged assets of the estate are alleged to be the proceeds of a life insurance policy, the beneficiary of which is not the estate.  We conclude it may not.

A probate court has jurisdiction over the property of the estate of the deceased only:  "The probate court has general subject matter jurisdiction over the decedent's property and as such, it is empowered to resolve competing claims over the title to and distribution of the decedent's property."  (*Estate of Heggstad* (1993) 16 Cal.App.4th 943,

---

constitutional provision.  [Citation.]  Other examples of lack of jurisdiction in this fundamental sense will readily occur."  (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.)

[6] Petitioners incorrectly contend that objector has waived the issue and is estopped from contending the probate court lacked subject matter jurisdiction because, in a related interpleader action, she (successfully) argued that the related action should be stayed pending resolution of this appeal.  Because the parties have all directed our attention to the pending interpleader action, we grant objector's request for judicial notice of that case's documents.  We express no opinion on the merits of that matter.

[7] Probate Code section 13100 et seq. allows a decedent's successor in interest to receive the decedent's personal property by affidavit when the value of property is less than $150,000.

952.) However, our Supreme Court has held, "In the exercise of its legal and equitable powers [citations], a superior court sitting in probate *that has jurisdiction over one aspect of a claim to certain property* can determine all aspects of the claim." (*Estate of Baglione* (1966) 65 Cal.2d 192, 197, italics added.)

In the present case, decedent's estate has *no* interest in the proceeds of the Policy. Decedent merely had the right to designate to whom the Policy's proceeds should be paid after his death. "It is well settled that a beneficiary under an insurance policy takes by virtue of the contract of insurance rather than by the law of succession; that the proceeds *do not become a part of the estate of the insured*; and the law of descent and distribution has no applicability to such cases." (*Estate of Welfer* (1952) 110 Cal.App.2d 262, 265, italics added.) Because the probate court had no jurisdiction over the subject matter of the order, the order is void.

" '[A]n act beyond a court's jurisdiction in the fundamental sense is void; it may be set aside at any time and no valid rights can accrue thereunder . . . .' Stated another way, '[s]ubject matter jurisdiction of California courts (i.e., competence of a court to adjudicate a particular civil action) is governed by the state constitution and by statute . . . . [¶] Unlike personal jurisdiction, subject matter jurisdiction cannot be conferred on a court by consent of the parties, waiver, or estoppel. A judgment rendered by a court that does not have subject matter jurisdiction is void and unenforceable and may be attacked anywhere, directly or collaterally, by parties or by strangers.' " (*Marlow v. Campbell* (1992) 7 Cal.App.4th 921, 928.)

We need not further address the parties' contentions. "When, as here, there is an appeal from a void judgment, the reviewing court's jurisdiction is limited to reversing the trial court's void acts." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701.)

## DISPOSITION

The order is reversed.

7

_____
Dondero, J.

We concur:


_____
Humes, P. J.


_____
Banke, J.


A151975 *Post v. Post*

8

Trial Court:          San Mateo County Superior Court

Trial Judge:          Hon. John W. Runde

Counsel:

Niesar & Vestal LLP, Jeanne M. Darrah, for Objector and Appellant

Anderlini & McSweeney LLP, Brian J. McSweeney, Sean M. Jacobson; Cohen & Jacobson, Lawrence A. Jacobson, for Petitioners and Respondents

A151975  *Post v. Post*

9